NORTHERN JUSTICE PROJECT, LLC
James J. Davis, Jr., ASBA 9412140
*jdavis@njp-law.com*
Goriune Dudukgian, ASBA No. 0506051
*gdudukgian@njp-law.com*
Ryan Fortson, ASBA No. 0211043
*rfortson@njp-law.com*
310 K Street, Suite 200, Anchorage, AK 99501
Telephone: (907) 264-6634, Facsimile: (866) 813-8645

Attorneys for Plaintiff RAFAEL A. MAGNO

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

| | |
|---|---|
| RAFAEL A. MAGNO, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, NA, and BAC HOME LOANS SERVICING, LP<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1. This is a class action for declaratory and injunctive relief and damages based on the failure of defendant Bank of America, N.A., acting independently and through its subsidiary, defendant BAC Home Loans Servicing, LP (hereinafter, collectively "BOA"), to honor agreements it has entered into with Alaskan homeowners to modify their mortgages and thereby prevent foreclosure.

2. As discussed below, BOA enters into standardized agreements with distressed Alaskan homeowners for the temporary trial modification of their existing Notes and mortgages. These modification agreements promise that, if the homeowner complies with the terms of the temporary modification agreement and the homeowner's representations on which the offer of the modification was based continue to be true in all material respects, then the homeowner will receive a permanent modification from BOA on the same terms.

1

*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT
Case 3:11-cv-00167-RRB   Document 1   Filed 08/19/11   Page 1 of 15

3. These contracts, known as a "Trial Period Plan" ("TPP") Agreement, are for finite time periods – normally three months – and specify that "TIME IS OF THE ESSENCE."

4. In this case, the plaintiff made the required payments under his TPP Agreement and expected to receive from BOA either a final modification or a denial of eligibility before the end of the trial period. Neither was forthcoming. Despite plaintiff's efforts, BOA has ignored its contractual obligation to permanently modify plaintiff's loan. This has become standard practice for BOA. Because BOA is not meeting its contractual obligations, plaintiff is being wrongfully deprived of an opportunity to cure his mortgage delinquency, pay his loan and save his home.

5. Plaintiff's plight is shared by many other Alaskans. By failing to live up to its obligations under the terms of the TPP contracts that it formed with Alaskan homeowners, BOA has left hundreds of Alaskan borrowers in a state of limbo – often worse off than they were before they sought a modification from BOA. BOA's actions violate its contractual obligations and are unfair and deceptive under Alaska law. Plaintiff Rafael A. Magno seeks to vindicate these homeowners' rights in this class action lawsuit.

## JURISDICTION AND VENUE

6. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 because this action is between parties that are citizens of different states and the amount in controversy is greater than $75,000. For diversity jurisdiction purposes, a national bank is a citizen of the state designated as its main office on its organization certificate. *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 306 (2006). Bank of America, N.A. is, on information and belief, a citizen of North Carolina. BAC Home Loans Servicing, LP is, on information and belief, a citizen of California. Plaintiff is a citizen of Alaska.

7. This court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) in that this matter is brought as a putative class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from any defendant.

8. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) inasmuch as the
2

*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT
Case 3:11-cv-00167-RRB   Document 1   Filed 08/19/11   Page 2 of 15

unlawful practices are alleged to have been committed in this District, defendants regularly conduct business in this District, and the named plaintiff resides in this District.

**PARTIES**

9. Plaintiff Rafael A. Magno is a resident of Anchorage, Alaska. He lives at 7225 E. 34th Avenue, Anchorage, Alaska 99504.

10. Defendant Bank of America, N.A. ("Bank of America") is a mortgage lender headquartered in Charlotte, North Carolina and does business in Anchorage, Alaska.

11. BAC Home Loans Servicing, LP ("BAC") is a wholly-owned subsidiary of Bank of America. BAC is headquartered in Calabasas, California and does business in Anchorage, Alaska. BAC is a servicer of residential mortgage loans.

12. At all times herein mentioned, defendants, Bank of America, N.A. and BAC Home Loans Servicing, LP, both individually and collectively, are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

13. Each defendant had actual and/or constructive knowledge of the acts of the other defendant as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of said acts.

**FACTS AND GENERAL ALLEGATIONS**

14. Mr. Magno and his wife Emma bought their home in 2007. They obtained a mortgage from Countrywide Home Loans, Inc.

15. At some point after the Magnos purchased their home, Bank of America, NA acquired Countrywide Home Loans, Inc. and with it the Magnos' mortgage.

16. In 2009 Mrs. Magno needed surgery. The Magnos had to pay out-of-pocket for a significant portion of Mrs. Magno's medical bills and, as a result, they fell behind on their mortgage payments.

17. In the summer of 2009 BOA threatened foreclosure.

18. This is the Magnos' only home. If they lose this home they will have nowhere to live and will be homeless.

## THE TPP AGREEMENTS

19. BOA routinely offers TPP Agreements to distressed homeowners who have fallen behind on their mortgage payments. Each time, BOA uses a standard form agreement.

20. On July 27, 2009, BOA wrote Mr. Magno a letter that describes the TPP program. The letter begins, "Everyone goes through difficult times. That's when you need someone on your side the most. BAC Home Loans Servicing, LP … wants to help homeowners have affordable mortgage payments and stay in their homes. . . ." A true and correct copy of BOA's July 27, 2009 letter is attached hereto as Exhibit 1.

21. BOA's July 27 letter informed Mr. Magno that there were four steps he needed to follow in order to obtain a loan modification:

- Step 1: Mr. Magno would provide BOA with information regarding his financial situation;
- Step 2: BOA would review that information to determine if he is eligible under the program;
- Step 3: If BOA determined that he was eligible, Mr. Magno would be offered a TPP for three months; and
- Step 4: If Mr. Magno successfully completes that three month period, "a new loan modification agreement will be sent" to him.

22. Attached to the July 27 letter was BOA's standard form TPP Agreement. A true and correct copy of the TPP Agreement is attached hereto as Exhibit 2.

23. The form TPP Agreement that BOA provided Mr. Magno describes the homeowner's duties and obligations under the TPP and promises a permanent loan modification for those homeowners that execute that agreement and fulfill the documentation and payment requirements.

24. The very first sentence of the form TPP Agreement used by BOA states: "If I am in compliance with this Trial Period Plan (the 'Plan') and my representations in Section 1 continue to be true in all material respects, then the Servicer *will* provide me with a Home Affordable Modification Agreement ('Modification Agreement'), as set forth in Section 3, that

4

*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT
Case 3:11-cv-00167-RRB   Document 1   Filed 08/19/11   Page 4 of 15

would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage." (Emphasis added.)

25. Section 3 of the form TPP Agreement repeats this promise: "If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer *will* send me a Modification Agreement for my signature which *will* modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date." (Emphasis added.)

26. Further, the form TPP Agreement defines a finite "trial period" of three months, states that "TIME IS OF THE ESSENCE" and identifies the "modification effective date" as the first day of the month following the month in which the final trial payment is due.

27. Under the terms of the contract, if the homeowner executes the TPP Agreement, complies with all documentation requirements verifying the information on which the initial finding of eligibility was made and makes all three TPP monthly payments, the homeowner must be offered a permanent modification by BOA.

28. The TPP Agreement requires homeowners to undertake several duties that they are not otherwise obligated to undertake. Section 1 of the TPP Agreement requires the homeowner to agree to undergo credit counseling, if they are asked to do so. Mr. Magno, among other class members, was asked to and did, in fact, complete credit counseling. In addition, the TPP Agreement requires homeowners to submit financial documentation to BOA that they are not otherwise required to provide, to set up newly established escrow accounts, and to make legally binding representations about their personal circumstances.

29. In order to perform under the terms of the TPP Agreement, BOA must tender a permanent modification by the end of the trial period. If BOA believes, based on new and different information that it gathers from the homeowner during the trial period, that its initial determination of eligibility was incorrect, it is obligated to notify the homeowner of that fact prior to the end of the trial period. If BOA fails to do so, it has breached the TPP Agreement and waived its ability to claim ineligibility or non-compliance in the future.

5

*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT

30. Mr. Magno executed the TPP Agreement with BOA on August 5, 2009. At all relevant times, Mr. Magno has responded to all document requests made by BOA by timely supplying the requested documents. Mr. Magno supplied information to BOA that was truthful throughout the TPP process.

31. In October 2009, Mr. Magno made his third consecutive timely TPP payment. In breach of the TPP Agreement, however, BOA did *not* tender to Mr. Magno a permanent modification.

32. On March 30, 2010, after Mr. Magno had made his seventh TPP payment, BOA sent him a letter that states, "Thank you for meeting the terms of your Home Affordable Modification Trial Period Plan by providing your financial information and making your trial payments." The letters states, in bold, "You qualify for a permanent modification of your home loan under the Home Affordable Modification Program." The March 30 letter also states that BOA is "in the process of preparing" Mr. Magno's permanent modification agreement and that BOA would send the agreement to Mr. Magno "soon." BOA told Mr. Magno to "be on the lookout for a package in the mail" that contains his permanent loan modification paperwork. A true and correct copy of BOA's March 30 letter is attached hereto as Exhibit 3.

33. In breach of the TPP Agreement, and contrary to BOA's representations in its March 30 letter, BOA never sent Mr. Magno his permanent modification paperwork.

34. In January 2011, after Mr. Magno had made his 17th timely TPP payment, BOA inexplicably sent Mr. Magno a letter stating that his loan "is not eligible for a Home Affordable Modification." The letter states that the "owner of [Mr. Magno's] loan has not approved a modification" based on the results of BOA's net present value ("NPV") test. The letter states that upon request BOA will provide Mr. Magno with the NPV inputs it used under the NPV test. A true and correct copy of BOA's January 2011 letter is attached hereto as Exhibit 4.

35. Mr. Magno requested the NPV values referenced in BOA's January 2011 letter. BOA never provided them.

36. On March 11, 2011, BOA sent Mr. Magno a "Notice of Intent to Accelerate" his mortgage. BOA did so despite the fact that Mr. Magno has never missed a payment under his

6

*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT

TPP plan. BOA's letter states that Mr. Magno's loan "is in serious default because the required payments have not been made." The letter also states that if Mr. Magno does not pay BOA at least $21,340.14 by April 10, 2011, BOA will foreclose on Mr. and Mrs. Magno.

## BOA's ACTIONS HAVE INJURED PLAINTIFF AND OTHER ALASKA HOMEOWNERS

37. Whenever BOA breaches one of its TPP Agreements and delays the tender of a permanent modification beyond the close of the trial period, the terms of such a modification are less beneficial to the homeowner than they otherwise would be had BOA properly performed. If plaintiff or a similarly situated Alaskan homeowner has accepted a modification on terms that are less favorable than those of a modification that should have been offered at the close of their trial period, their injury is measured by the difference between the modification they accepted and the modification they were entitled to. If an eligible homeowner has not been tendered a permanent modification, their injury is measured by the difference between their current circumstances and the terms of the modification that they were entitled to – a difference that includes the wrongful loss of a property interest for those who have suffered foreclosure.

38. BOA's behavior has also left many Alaskan homeowners in limbo, wondering if their home can be saved and preventing these homeowners from pursuing other avenues of resolution, including using the money they are putting toward trial period-level payments to fund bankruptcy plans, relocation costs, short sales or other means of curing their default.

39. Mr. Magno's injury includes the difference between a permanent modification of his loan effective December 1, 2009 and his current circumstances: including the wrongful assessment of numerous fees and costs and the wrongful prospect of imminent foreclosure and homelessness.

## CLASS ACTION ALLEGATIONS

40. Mr. Magno brings this complaint on his own behalf and on behalf of all Alaskans similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

7
*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT
Case 3:11-cv-00167-RRB   Document 1   Filed 08/19/11   Page 7 of 15

41. The class is defined as: All Alaska homeowners whose home mortgage loans have been serviced by BOA and who, since August 16, 2008, have entered into a TPP Agreement with BOA and made all payments required by their TPP Agreement, other than borrowers to whom BOA timely tendered either:

    a. A permanent loan modification agreement; or

    b. A written denial of eligibility.

42. All requirements of Rule 23(a) are met in this case. Specifically,

    a. The class is so numerous that joinder of all members is impracticable. The number of individuals in the above-defined class, although presently unknown, is believed to be numerous.

    b. All class members have been subject to and affected by the same conduct. The claims are based on standard form contracts and uniform loan modification processing requirements. There are questions of law or fact common to the class, including but not limited to:

        i. whether BOA's receipt of an executed TPP Agreement, along with supporting documentation and three monthly payments, creates a binding contract or otherwise legally obligates BOA to offer class members a permanent loan modification;

        ii. whether BOA's failure to provide permanent modifications under the circumstances described herein amounts to a breach of contract and/or a breach of the covenant of good faith and fair dealing;

        iii. whether BOA's conduct violates Alaska's Unfair Trade Practices and Consumer Protection Act (UTPCPA); and

        iv. whether the Court can order damages and enter injunctive relief.

    c. The claims of the representative party are typical of those of the class.

    d. The representative party will fairly and adequately represent the class. Neither the representative plaintiff nor his counsel have interests which might cause them not to vigorously pursue this action.

43. Certification of a class under Federal Rule 23(b)(2) is appropriate because BOA has at all times acted or refused to act on grounds generally applicable to the class, thereby making appropriate declaratory and injunctive relief with respect to the class as a whole.

44. Alternatively, certification of a class under Federal Rule 23(b)(3) is appropriate because:

    a. The questions of law or fact common to the members of the class predominate over any questions affecting only individual class members; and

    b. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since: (1) the class is readily definable and should be easily identified by examination of BOA's records; (2) prosecution of this case as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims which otherwise would be too small to support the expense of individual litigation against BOA; (3) undersigned counsel are aware of no other pending class actions in Alaska regarding the subject matter of this case; (4) it is desirable to concentrate the litigation of these claims in Anchorage because, upon information and belief, the majority of the homeowners in Alaska that BOA services are in Anchorage; and (5) there are no problems which will make this case difficult to manage as a class action.

## COUNT I: BREACH OF CONTRACT AND THE COVENANT OF GOOD FAITH AND FAIR DEALING

45. Plaintiff incorporates by reference the allegations in each of the preceding paragraphs.

46. Plaintiff brings this claim on his own behalf and on behalf of each member of the class described above.

47. As described above, the standard TPP Agreements sent by BOA to the plaintiff and the members of the proposed class constitute a valid offer. By executing the TPP

9

*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT

Agreements and returning them to BOA along with the supporting documentation, plaintiff and the class members accepted BOA's offers.

48. Alternatively, plaintiff and the class members' return of the TPP Agreements constitutes an offer. Acceptance of these offers occurred when BOA accepted plaintiff's and the class members' TPP payments.

49. The TPP Agreements were supported by consideration. First, the TPP payments to BOA constitute consideration. By making those payments, the plaintiff and the class members gave up the ability to pursue other means of saving their home. Further, the TPP Agreement requires homeowners to undertake several duties that they are not otherwise obligated to undertake. Section 1 of the TPP Agreement requires homeowners to agree to undergo credit counseling, if they are asked to do so. Mr. Magno, among other class members, was asked to and did complete credit counseling. In addition, the TPP Agreement requires class members to submit financial documentation that they are not otherwise required to provide, to set up newly established escrow accounts, and to make legally binding representations about their personal circumstances. These actions constitute both a detriment to the class and a benefit to BOA.

50. The class and BOA thereby formed valid contracts.

51. To the extent that the contract was subject to a condition subsequent by providing BOA an opportunity to review the documentation submitted by the class when they returned the signed TPP Agreements, to determine its sufficiency, this condition was waived by BOA in that it failed to timely raise it and/or BOA is estopped to assert it as a defense to plaintiffs' claims.

52. By failing to offer plaintiff and the other class members permanent loan modifications, BOA breached its contracts with the class.

53. Plaintiff and the class remain ready, willing and able to perform under their contracts with BOA.

54. Plaintiff and the class have suffered harm and are threatened with additional harm from BOA's breach, including but not limited to longer loan payoff times, higher

principle balances, improper negative reporting to credit bureaus, inappropriate fees and charges assessed to them (including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default), and increased accrued interest. If a class member has accepted a modification on terms that are less favorable than those of a modification that should have been offered at the close of their trial period with BOA, their injury is measured by the difference between the modification they accepted and the modification they were entitled to. If a class member has not been tendered a permanent modification, their injury is measured by the difference between their current circumstances and the terms of the modification that they were entitled to – a difference that includes the wrongful loss of a property interest for those who have suffered foreclosure.

55. By making TPP payments both during and after the TPP, plaintiff and the class forewent other remedies that they might have pursued to save their home, such as restructuring their debt under the bankruptcy code, or pursuing other strategies to deal with their default, such as selling their home. Some putative class members have suffered additional harm in the form of foreclosure activity against their homes.

56. BOA is obligated by contract and common law to act in good faith and to deal fairly with each class member so as to effectuate the reasonable expectations of the parties to the agreement. *See e.g.*, *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp.*, 221 P.3d 977, 992 (Alaska 2009).

57. BOA routinely and regularly acts in bad faith and breaches this duty for its own economic benefit by:

    a. Failing to permanently modify loans and using unfair means to keep plaintiff and the class in trial periods of indeterminate lengths;

    b. Making inaccurate calculations and determinations of plaintiff's and the class's eligibility for permanent modifications;

    c. Encouraging and/or allowing its employees and agents to make inaccurate statements regarding plaintiff's and class members' eligibility for permanent loan modifications;

11
*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT
Case 3:11-cv-00167-RRB   Document 1   Filed 08/19/11   Page 11 of 15

|   |   |
|---|---|
| 1 | d.  Failing to follow through on written and implied promises; |
| 2 | e.  Failing to follow through on contractual obligations; and |
| 3 | f.  Failing to give permanent modifications to qualified borrowers. |

58. As a result of these failures to act in good faith and the absence of fair dealing, BOA caused plaintiff and the class harm, as alleged above. BOA's bad faith was thus to plaintiff and the class's detriment.

## COUNT II: PROMISSORY ESTOPPEL

59. Plaintiff incorporates by reference the allegations in each of the preceding paragraphs.

60. Plaintiff brings this claim on his own behalf and on behalf of each member of the class described above.

61. BOA, by way of its TPP Agreements, made representations to plaintiff and the class that if they returned the executed TPP Agreements with supporting documentation, and timely made all of their TPP payments, they would receive permanent loan modifications.

62. BOA's TPP Agreements were intended to induce plaintiff and the class to rely on them and make monthly TPP payments.

63. Plaintiff and the class did indeed rely on BOA's representation by submitting TPP payments.

64. Given the language in the TPP Agreement, plaintiff's and the class members' reliance was reasonable.

65. Plaintiff's and the class members' reliance was to their detriment. If a class member has accepted a modification on terms that are less favorable than those of a modification offered at the close of their trial period, their detrimental reliance is measured by the difference between the modification they accepted and the modification they were entitled to. If an eligible homeowner has not been tendered a permanent modification, their detrimental reliance is measured by the difference between their current circumstances and the terms of the modification that they were entitled to − a difference that includes the wrongful loss of a property interest for those who have suffered foreclosure. Such detriment includes longer loan

12
*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT
Case 3:11-cv-00167-RRB   Document 1   Filed 08/19/11   Page 12 of 15

payoff times, higher principle balances, improper negative reporting to credit bureaus, inappropriate fees and charges assessed to them (including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default), and increased accrued interest. Further, Plaintiffs have lost the opportunity to fund other strategies to deal with their default and to avoid foreclosure.

## COUNT III: VIOLATION OF ALASKA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (UTPCPA)

66. Plaintiff incorporates by reference the allegations in each of the preceding paragraphs.

67. Plaintiff brings this claim on his own behalf and on behalf of each member of the class described above.

68. BOA is violating AS 45.50.471(a) and AS 45.50.471(b)(11)-(12) and (14) by making false, deceptive, and misleading statements and omissions about material aspects of the goods and services described herein.

69. BOA made these statements and omissions knowingly and willfully and with the intent that plaintiff and the class would rely on them and would enter into contracts or obligations as a result.

70. BOA's conduct was likely to induce reliance and to create confusion and misunderstanding.

71. Plaintiff and the class did rely on BOA's statements and omissions.

72. BOA's conduct as set forth herein is deceptive, unfair and unconscionable.

73. Plaintiff and the class have suffered an "ascertainable loss of money or property" as a result of this conduct, including:

    a. wrongful foreclosures;
    b. otherwise avoidable losses of homes to foreclosure;
    c. less favorable loan modifications;
    d. increased fees and other costs to avoid or attempt to avoid foreclosure;
    e. loss of savings in fruitless attempts to secure loan modifications;

13
*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT
Case 3:11-cv-00167-RRB   Document 1   Filed 08/19/11   Page 13 of 15

    f. loss of opportunities to pursue other refinancing or loss mitigation strategies;

    g. significant stress and emotional distress;

    h. accrued interest and increased principal balances; and

    i. less favorable modification terms.

  74. The plaintiffs have complied with the pre-suit notice requirement of AS 45.50.535(b). BOA failed to promptly stop the above-described unlawful acts or practices after receiving the notice.

  75. This Court should enter an injunction requiring BOA to disgorge all fees and costs that it has collected from plaintiff and the class in violation of its TPP Agreements; an injunction and declaration that BOA's practices are illegal; an injunction providing that BOA may not foreclose on Mr. Magno or any other member of the class in violation of the TPP Agreements; and an award to plaintiff and the class of actual, exemplary, and/or statutory damages under AS 45.50.531(a).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays the Court to order a speedy hearing and advance this matter on the calendar, pursuant to Federal Rule of Civil Procedure 57, and award the following relief:

 (1) Certification of the proposed class;

 (2) Injunctive relief as prayed for above;

 (2) Declaratory relief as prayed for above;

 (3) A judgment awarding plaintiff and the class three times their actual damages or $500, whichever is greater, under AS 45.50.531(a);

 (4) A judgment declaring the acts and practices of BOA complained of herein to constitute a breach of contract and a breach of the covenant of good faith and fair dealing, as well as a declaration that they are required by the doctrine of promissory estoppel to offer permanent modifications to class members on the terms promised in class members' temporary modifications, together with an award of monetary damages and other available relief on those claims;

14

*Magno v. Bank of America, NA, et al.*
CLASS ACTION COMPLAINT
Case 3:11-cv-00167-RRB   Document 1   Filed 08/19/11   Page 14 of 15

1       (5)     Grant a permanent or final injunction enjoining BOA's agents and employees, affiliates and subsidiaries, from continuing to harm plaintiff and the members of the Class;

      (6)     Order BOA to adopt and enforce a policy that requires appropriate training of their employees and agents regarding their duties under its TPP Agreements;

      (7)     Order specific performance of BOA's contractual obligations together with other relief required by contract and law;

      (8)     Award restitution and prejudgment interest;

      (9)     An award to the plaintiff of his costs and expenses of litigation;

      (10)    An award to plaintiff of his full attorney's fees; and

      (11)    Any such other and further relief as this Court may deem just under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 16, 2011

                                      NORTHERN JUSTICE PROJECT, LLC
                                      Attorneys for Plaintiff

                                        /s/ James J. Davis, Jr.
                                      James J. Davis, Jr., ASBN 9412140
                                      Goriune Dudukgian, ASBN 0506051
                                      Ryan Fortson, ASBN 0211043